FILED
APR 05 2018
Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOSEPH COYNE, )
)
Petitioner, )
)
v. )
)
HEWLETT-PACKARD COMPANY, ) Civil Case No. 1:16-cv-01694(RCL)
)
Respondent. )

## MEMORANDUM OPINION

Now before the Court is petitioner's Motion to Vacate Arbitration Award and respondent's Motion to Confirm Arbitration Award and in Opposition to Motion to Vacate Arbitration Award. Upon consideration of petitioner's Motion to Vacate Arbitration Award [ECF No. 1], respondent's Motion to Confirm Arbitration Award and in Opposition to Motion to Vacate Arbitration Award [ECF No. 9], petitioner's Reply Memoranda [ECF Nos. 16, 18], and respondent's Reply Memorandum [ECF No. 20], the Court on September 29, 2017 granted respondent's Sealed Motion to Confirm Arbitration and denied petitioner's Motion to Vacate Arbitration Award. [ECF No. 25]. This Memorandum explains the Court's ruling.

I.  **Background**

During the times relevant to this matter, Joseph Coyne ("petitioner") was employed by Hewlett-Packard Company ("respondent") as a Business Development Manager on respondent's Software Sales Channels and Alliance Team. As a Business Development Manager, petitioner was responsible for developing business relationships with third-party resellers who in turn bring additional business opportunities to respondent. Petitioner is paid an annual base salary and receives variable Incentive Compensation ("commission"). Petitioner's commission eligibility is

1

outlined by his Compensation Plan, consisting of annual sales letters and the FY2014 Global Sales Compensation Policy, which is incorporated by reference in the sales letters. On June 26, 2014, petitioner signed the last of four sales letters that he received during the 2014 fiscal year. The June 26, 2014, sales letter was extremely similar to the other three letters in form and substance, except for the added requirement that a deal be "sourced" as a condition to be eligible for commission. According to the Compensation Plan, respondent's management can adjust an employee's provisional commission for a variety of reasons

The current dispute centers on a multi-million-dollar transaction between respondent and Defense Healthcare Management ("DHM Deal"). The DHM Deal consisted of the sale of cloud service automation products ("Opps sale") and enterprise license agreement products ("Apps sale"). It is not contested that the DHM Deal was facilitated by petitioner's work with a third-party reseller, Presidio Networked Solutions, Inc. First, respondent explains it denied petitioner all commission on the Apps sale because it was an extension of a business arrangement that respondent already had and was not "sourced" in accordance with his commission eligibility standards. Next, respondent states that petitioner was only awarded 50 percent credit for the Opps sale because the DHM Deal was not disclosed in time to be taken into account in setting petitioner's sales quota for Fiscal Year 2014. Therefore, petitioner's quota was set too low. Accordingly, petitioner received approximately $56,000 in connection with his work facilitating the DHM Deal. Petitioner argues, however, that he has a contractual right to receive credit on the full amount of both sales in the amount of an additional $199,180.

Petitioner initiated arbitration, pursuant to an arbitration agreement with respondent, to challenge the respondent's decision regarding his commission. After an exhaustive two-day arbitration hearing, the arbitrator dismissed petitioner's breach of contract claim and unjust

enrichment claim. Petitioner now moves to partially vacate the arbitrator's Award and Order regarding the dismissal of his unjust enrichment claim under the Federal Arbitration Act ("Act"). Petitioner argues that the arbitrator exceeded his power and manifestly disregarded the law by denying his claim for unjust enrichment.

## II. Legal Standard for Judicially Vacating an Arbitration Award

### A. Exceeded Powers

The Federal Arbitration Act establishes the exclusive grounds by which a court may vacate an arbitration award granted under the FAA. *See* 9 U.S.C. §§ 10–11 (2013); *see also Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S.576, 586–88 (2008). Sections 10 and 11 of the FAA sharply limit the judicial review of the evidentiary and legal findings of an arbitration panel to "egregious departures from the parties' agreed-upon arbitration: corruption, fraud, evident partiality, misconduct, misbehavior, exceeding powers, evident material miscalculation, evident material mistake, awards upon a matter not submitted; the only ground with any softer focus is imperfections, and a court may correct those only if they go to a matter of form not affecting the merits." *Id.* at 586 (internal quotations omitted).

### B. Manifest Disregard

The Supreme Court held in *Hall Street* that the statutory grounds for vacatur established within §§ 10 and 11 of the FAA are exclusive, rendering the "manifest disregard" theory of attack on an arbitral award an uncertain proposition. *Hall Street*, 552 U.S. at 586. This issue has yet to be resolved in subsequent cases. In *Stolt–Nielsen*, 559 U.S. 662 (2010), the Supreme Court resolved the issue on one of the FAA's statutory grounds but acknowledged that manifest disregard may not have survived its *Hall Street* decision. *Stolt–Nielsen*, 559 U.S. at n. 3. Likewise, in 2013, this Court evaluated a "manifest disregard" claim with considerable suspicion

3

"because the case law controlling this Court's reasoning has refused to revive 'manifest disregard' since its apparent death knell in *Hall Street*."[1] *FBR Capital Mkts. & Co v. Hans*, 985 F. Supp. 2d 33, 36 (2013). Accordingly, this Court evaluates petitioner's "manifest disregard" claim in the present case with the same considerable suspicion. Assuming the doctrine survives, manifest disregard can only be established if "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Id.*

## III. Analysis

Petitioner's arguments that the arbitrator "exceeded [his] powers" and manifestly disregarded the applicable law of unjust enrichment are reviewed in light of the high presumption of validity owed to arbitration decisions. *See id.*

### A. Exceeded Powers

Petitioner argues the arbitration award should be vacated because the arbitrator "exceeded [his] powers" when he affirmed respondent's decisions (1) to deny credit for the Apps sale as not "sourced" and (2) to reduce by 50 percent the Opps sale which was "sourced" [ECF No. 2-3]. Because the arbitrator's decisions appear to have rested on credible testimony gathered during the proceedings, the Court finds that the arbitrator did not exceed his powers.

First, petitioner contends that the arbitrator exceeded his powers when he affirmed respondent's decision that the Apps sale was not sourced and not reviewed under the Incentive and Conditions Review ("ICR") process. Petitioner explains that the decision not to source this portion of the transaction impacted his commission and was therefore subject to the ICR process

---

[1] In *Affinity Fin. Corp. v. AARP Financial, Inc.*, the D.C. Circuit "assumed without deciding" that "manifest disregard" still existed post-*Hall Street*, but held that the party requesting vacatur had not even argued the point. 468 Fed.Appx. 4, 5 (D.C. Cir. 2012).

4

under several provisions of the ICR manual. Petitioner contends that "[b]y ignoring the clear provisions of the ICR, the arbitrator's decision was not, as it should have been, 'drawn from the essence of the underlying agreements." [ECF 2-3 at 9]. Next, petitioner states that the arbitrator exceeded his power when he affirmed respondent's decisions to reduce by 50 percent the remaining balance of the transaction which was "sourced." Petitioner argues the decision was not subjected to a meaningful review and the arbitrator's decision reflected his own policy choice regarding the ICR process. Moreover, petitioner goes on to make a number of claims that the arbitrator excluded or ignored relevant evidence. [ECF 2-3 at 14-21]. The court finds that none of these claims individually or collectively satisfies the high burden petitioner faces.

When reviewing these claims the Court is obligated to approach the arbitrator's decisions with a high presumption of validity. The record of the arbitration proceeding and the arbitrator's order clearly show that the arbitrator reached his decision after hearing hours of testimony from both parties regarding the facts and circumstances of the case. The Award and Order illustrates that the arbitrator relied on the testimony of Marry Jagger, the Sales Compensation Business Manager who administers the ICR process, to establish that denying commission on the Apps sale, $4,428,084.72 of the transaction, and reducing the commission by 50 percent on the remaining balance was "in full compliance with (non-contractual) HP procedures and guidelines in [petitioner's] 2014 Sales Letter and in the 2014 HP Global Sales Compensation Policy." [ECF 2-4 at 17]. Because the arbitrator's decision was based on the record and conceivable reasoning, the Court finds that there is not sufficient evidence to establish that the arbitrator strayed from interpretation of the agreement at issue or effectively dispensed his own brand of industrial justice in either of the decisions at issue in the present case. Accordingly, the Court finds that the arbitrator did not exceed his powers in affirming either of respondent's decisions.

## B. Manifest Disregard

Next, petitioner argues that the arbitrator's decision reflected a manifest disregard of the applicable law of unjust enrichment. Petitioner contends that the arbitrator, "though citing to the appropriate law for unjust enrichment, ignored or confounded the obvious elements of the claim and incorporated new elements not necessary to prove unjust enrichment." [ECF 18 at 8]. More specifically, the arbitrator failed to address the third element of the claim and "inserted his own, new element: whether [petitioner] could reasonably have expected full payment of [his] commissions." *Id.* at 11. In accordance with the FAA and the *Hall Street* and *Stolt-Nielsen* cases, the Court views this claim under a high degree of suspicion and provides considerable deference to the decision of the arbitrator.

Assuming manifest disregard survived *Hall Street*, the Court must first determine whether the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether. *See FBR Capital Mkts.*, 985 F. Supp. at 36. As stated above, the record of the arbitration proceeding and the arbitrator's order establishes that the arbitrator reached his decision only after hearing hours of testimony from both parties regarding the controlling law and circumstances of the case. The Award and Order illustrates that the arbitrator believed respondent treated petitioner fairly and there was no rational basis for petitioner "to expect full incentive compensation on the basis of flawed sales quotas that were obviously too low." ECF 2-4 at 19. While the Award and Order does not provide an in-depth analysis of each element of petitioner's claim, the arbitrator recognized and properly stated the controlling law of unjust enrichment in the State of Pennsylvania, and cites to a case supporting the proposition that the reasonableness of plaintiff's expectation in receiving payment is a viable factor in assessing whether a defendant has been unjustly enriched. *See Quandry Sols. Inc. v. Verifone Inc.*, 2009

WL 997041, at *17 (E.D. Pa. 2009). The arbitrator appears to have applied the relevant law properly. The fact that *Quandry Sols. Inc.* is not controlling authority in this Court, does not impact the considerable deference the arbitrator's decision receives. The arbitrator recognized and properly stated the elements of unjust enrichment under Pennsylvania law and there is no evidence to suggest that his decision was not made in accordance with the governing law.

Because the arbitrator did not ignore or refuse to apply the law of unjust enrichment, the Court finds that the arbitrator did not exercise a manifest disregard for the law.

## IV. Conclusion

For the reasons stated herein, the Court **GRANTS** respondent's Sealed Motion to Confirm Arbitration, and **DENIES** petitioner's Motion to Vacate Arbitration Award. A separate Order issued on September 29, 2017.

DATE: 4/5/18

_____
Royce C. Lamberth
United States District Judge